**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANGELIQUE KINCAID, individually and<br>as the natural mother and next friend of<br>SPANNIESHA JOHNSON, a minor child,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF EDWARDSVILLE, an Illinois<br>Municipal Corporation; TIMOTHY<br>GALLION, City of Edwardsville Police<br>Officer, in his individual and official<br>capacity; JAMES MURRAY, City of<br>Edwardsville Police Officer, in his<br>individual and official capacity; and ERIC<br>JONES, City of Edwardsville Police<br>Officer, in his individual and official<br>capacity,<br><br>　　　　　Defendants. | CIVIL NO. 09-cv-350-WDS |

**MEMORANDUM AND ORDER**

**STIEHL, District Judge:**

　　　Before the Court is defendants' City of Edwardsville ("City"), Timothy Gallion ("Gallion"),

Barry Jones (incorrectly named as Eric Jones) ("Jones") and James Murray's ("Murray")[1] motion

for summary judgment (Doc. 43), to which plaintiffs Angelique Kincaid ("Kincaid") and

Spanniesha Johnson ("Johnson") have filed responses (Doc. 44, 45), and defendants a reply (Doc.

61).  Defendants filed a supplement to their motion for summary judgment (Doc. 54), to which

plaintiff Kincaid filed a motion to strike or alternatively a motion for extension of time to respond

(Doc. 55).  Defendants filed a response to Kincaid's motion to strike (Doc. 58).  Plaintiff Kincaid

---

[1] Gallion, Jones and Murray may also be referred to collectively as the "officers."

filed a response to defendants' supplement (Doc. 60) and defendants filed a reply to plaintiff's response (Doc. 61).  In light of the fact that Kincaid is seeking to strike defendants' supplement or seeking additional time to respond, and at this time has responded, the Court **FINDS** that neither plaintiffs nor defendants are prejudiced by the Court's consideration of defendants' supplement since plaintiff has now had the opportunity to properly respond to the supplement and defendants have filed a reply to Kincaid's response.  Accordingly, Kincaid's motion to strike (Doc. 55) is **DENIED** as **MOOT**, and the Court will consider all pleadings addressed to summary judgment.

Additionally before the Court is plaintiff Kincaid's motion for summary judgment (Doc. 51), and defendants' response to plaintiff Kincaid's motion (Doc. 56) .

## BACKGROUND

Spanniesha Johnson and Angelique Kincaid, (Johnson's natural mother and next friend), seek recovery from Gallion, Murray, and Jones (policemen employed by the City of Edwardsville), and the City.  AmeriCredit Financial Services, Inc. (AmeriCredit) hired Image Recovery Services, Inc. (Image) to repossess plaintiff Kincaid's vehicle, the underlying incident from which this lawsuit arose.  Plaintiffs have settled their claims against Americredit and Image.

On July 30, 2008, plaintiffs Kincaid and Johnson witnessed a tow truck owned by Image approach plaintiff Kincaid's vehicle, which was parked outside Kincaid's apartment.  The driver parked the tow truck behind the vehicle without attaching it.  When Kincaid confronted the driver, he returned to his truck without responding.  According to Kincaid, she retreated back into her apartment to look for her keys, but could not immediately find them.  Kincaid went out to her vehicle anyway, and when she reached the door, the tow truck driver was in between his

truck and her vehicle.  At some point after Kincaid ran out of her house, Johnson threw the

vehicle's keys to Kincaid.  Kincaid alleged that she then "entered her vehicle and the tow truck

driver proceeded to lift the back end of the Pathfinder off of the ground.  At this time, her vehicle

was immobilized and, despite her attempts, she was unable to drive her vehicle away from the

tow truck."  Kincaid stated that she attempted to break the car free of the wheel lift, but the front

tires of her vehicle made a loud squealing noise, generated smoke clouds, and deposited tire

rubber residue on the ground.  The exact series of events is not entirely clear, but it is clear that,

at the very least, by the time Kincaid turned her vehicle on and accelerated both forward and in

reverse, she could not break free from the tow truck.

Johnson thereafter got into the vehicle to give Kincaid a telephone.  Kincaid called the

City of Edwardsville Police Department, who told her that they could not stop a repossession,

but that they would send a patrol car.  After Kincaid refused to get out of the vehicle, the tow

truck driver also called the police.  Murray and Jones arrived at the scene at nearly the same

time.  Upon arrival, Murray approached the vehicle, which was still hooked to the tow truck with

the back wheels suspended and inside of which plaintiffs were sitting.  Murray asked Johnson if

she owned the vehicle.  She answered that she did not and got out of the vehicle pursuant to

Murray's order.  Kincaid asked to speak with Murray's superior, at which point Murray

contacted defendant Sergeant Gallion, who arrived later.  Neither defendant Murray nor Jones

asked Kincaid to get out of the vehicle.  Upon his arrival, Gallion repeatedly told Kincaid to get

out of the vehicle so that he could talk to her.  Gallion allegedly expressed hostility toward

Kincaid by threatening to break her car window and to drag her from the vehicle.

While Kincaid was still in the suspended vehicle, she called Johnson back over to the

3

vehicle.  Gallion ordered Johnson not to go near the vehicle.  Johnson reached toward the vehicle, at which point Gallion directed Jones to arrest Johnson.  Jones grabbed Johnson by the wrist, twisted her left arm behind her back, aggressively pushed upward, and placed both of her wrists in handcuffs behind her back.   Jones also allegedly "shoved" her into the back seat of a police car, where she "landed on her shoulder."  Gallion, during his deposition, stated that Johnson was arrested for obstruction but never actually charged.  Johnson stated during her deposition that her wrists were hurt because Jones put the cuffs on too tight, but also stated that she did not, at the time she was cuffed, complain she was injured or tell the officers she was injured.  Johnson spent some time in police custody but was later released at the scene.

While Johnson was being arrested, Kincaid opened the passenger-side window to seek her daughter's release.  Gallion reached in and unlocked the doors, allowing Murray to open the driver's side door and pull plaintiff Kincaid from the vehicle.  Kincaid stated during her deposition that, while being pulled from her car, her knee hit the door and was injured.  Kincaid stated that she used force against the police to show her strength to theirs, and yelled that the police were beating her, even though she now admits they were not.  Kincaid was handcuffed and placed into a police car while Gallion notified her that she was under arrest. Gallion stated that Kincaid was arrested for child endangerment.  After spending between 15 and 30 minutes in a police car, Gallion spoke to Kincaid and decided not to charge her.  Kincaid admits that none of the officers threatened to put her in jail if she did not give up her vehicle, nor did the officers threaten to arrest her for not giving up her vehicle.  Kincaid also stated that she did not feel that she had any choice in the situation that would allow her to keep her car.  Finally, Kincaid stated that her brother, to whom she was speaking on the phone, told her to give up her vehicle.

4

Although Kincaid and Johnson were released by the officers, the tow truck driver was arrested by Jones for an outstanding warrant.  The driver called his boss who arrived at the scene to tow Kincaid's vehicle away.  Kincaid did not speak to the driver's boss or object when he took the vehicle away.  One officer remained at the scene when the vehicle was towed, but the officer was not near Kincaid.  Kincaid stated that she was not contesting anything when the vehicle was actually towed away.

After the tow truck and the remaining officer left, plaintiffs called an ambulance, which took them to the local emergency room.  Kincaid stated that she went to the emergency room because she was experiencing chest pain.  She received a shot and has had no subsequent problems or treatments.  Kincaid asserts her knee was injured when she was pulled from the vehicle, but stated that she never received treatment and does not plan to seek treatment for her knee.

Johnson sought medical attention for wrist, arm, and shoulder pain.  The emergency room physician told her that her wrist was possibly fractured but that she should follow up with an orthopedic surgeon.  Johnson saw an orthopedic surgeon two days later, who stated at his deposition that Johnson complained of pain in her left arm but had full range of motion to the left shoulder and elbow and mild decrease in range of motion and tenderness to the left wrist.  The orthopedic surgeon opined that he could not rule out an "occult distal fracture," but that clinically and radiographically there was no evidence of such a fracture, but only Johnson's complaints of pain. The orthopedic surgeon stated that based upon a reasonable degree of medical certainty, the x-rays of the left shoulder, elbow, and wrist were negative.

Plaintiffs filed this twenty-eight (28) count lawsuit in the Circuit Court of the Third

Judicial Circuit in Madison County, Illinois, alleging many claims against defendants Gallion, Murray, Jones, the City, Image, and AmeriCredit.[2]  Plaintiffs have settled their claims against Image and Americredit.  The remaining defendants seek summary judgment in their favor on every remaining claim pursuant to Fed. R. Civ. P. 56©.

Plaintiffs seek summary judgment on the sole issue of whether the officers, acting under the color of state law, unlawfully repossessed Kincaid's vehicle or assisted in the unlawful repossession of Kincaid's vehicle, thereby violating her civil rights by depriving her of her property without due process of law.

## LEGAL STANDARD

Under Fed. R. Civ. P. 56©, summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56©.  A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to

---

[2] Plaintiff Kincaid's remaining claims against defendants are as follows:
  (1) 42 U.S.C. § 1983: against City (Count I), Gallion (Count III), Murray (Count IV), and Jones (Count V);
  (2) Battery: against City (Count IX), Gallion (X), and Murray (Count XI);
  (3) False Imprisonment: against City (Count XV), Gallion (XVI), and Murray (Count XVII);
  (4) Trespass to Chattels: against City (Count XXI), Gallion (Count XXII), Murray (Count XXIII), Jones (Count XXIV).

Plaintiff Johnson alleges the following claims:
  (1) 42 U.S.C. § 1983: against City (Count II), Gallion (Count VI), Murray (Count VII), and Jones (Count VIII);
  (2) Battery: against City (Count XII), Gallion (XIII), and Jones (Count XIV);
  (3) False Imprisonment: against City (Count XVIII), Gallion (XIX), and Jones (Count XX);

be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## ANALYSIS

### I.  42 U.S.C. § 1983 Claims Against the City and the Officers in their Official Capacities

#### A.  42 U.S.C. § 1983 Claims Against the Officers in their Official Capacities

Before analyzing the merits of the particular claims, the Court must determine whether plaintiffs can bring identical claims against both the City and the officers in their official capacities.  Each of plaintiffs' remaining claims in this lawsuit present identical claims against the City and either two or three of the officers in their official and individual capacities.  Suing these officers in their official capacities is another way of pleading an action against an entity of which the officer is an agent.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  In other words, suing these officers in their official capacities is the same as suing the City of Edwardsville.  *Id.* at 691.  Therefore, the Court **FINDS** that the official capacity claims against the officers are the same as suing the City and those claims cannot be pursued.

Therefore, the Court **GRANTS** defendants' motion for summary judgment as to all claims pursuant to 42 U.S.C. § 1983, against the officers in their official capacities (Counts III, IV, V, VI, VII, and VIII).

#### B.  42 U.S.C. § 1983 Claims Against the City

Plaintiffs allege two 42 U.S.C. § 1983 claims against the City, namely: the City's code of conduct, its policies and procedures, or its failure to adequately train the police defendants violated plaintiffs' Fourth and Fourteenth Amendment rights because (1) Kincaid was subject to unreasonable seizure of her person and property with excessive force (Count I); and (2) Johnson was subject to unreasonable seizure of her person with excessive force (Count II).

Municipal liability arises under § 1983 when: (1) an express policy, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority causes a constitutional injury. *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7ᵗʰ Cir. 1994) (internal citations omitted), *superseded by statute on other grounds*, IND. CODE. 12-19-1-21 (2000).

To impose liability under § 1983 to the City the plaintiff "must prove that the constitutional deprivation was caused by an official municipal policy or custom." *Hollins v. City of Milwaukee*, 574 F.3d 822, 828 (7th Cir. 2009) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986)). Allegations of a specific pattern or series of incidents that support the general allegation of a custom or policy suffice to establish municipal policy or custom. *Hollins*, 574 F.3d at 828.

Furthermore, "[t]he inadequacy of police training may serve as the basis for § 1983 liability, but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "There can be no liability . . . for failure to train when there has been no violation of the plaintiff's constitutional rights." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978); *Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006).

In addition, "[p]roof of deliberate indifference requires more than '[a] showing of simple or even heightened negligence.'" *Id.* at 492 (*citing Harris*, 489 U.S. at 388). According to the

Seventh Circuit:

> We shall find deliberate indifference on the part of policymakers only when such indifference may be considered a municipal policy or custom.  This may arise in either of two circumstances.  First, a municipality acts with deliberate indifference when, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the deficiency exhibits deliberate indifference on the part of the municipal policymakers.  Alternatively, we may find deliberate indifference when a repeated pattern of constitutional violations makes "the need for further training ... plainly obvious to the city policymakers."

*Jenkins*, 487 F.3d at 492.

### 1. 42 U.S.C. § 1983 Claims based City's Failure to Train Regarding Unlawful Arrests or Repossessions

Counts I and II of the complaint allege that the defendant City "failed to develop, maintain and enforce proper procedures and conduct proper training of its officers, causing the violation of" plaintiffs' rights. (Doc. 2).  Therefore, plaintiffs base liability against the defendant City on its alleged failure either to create policies, to enforce policies, or to train its policeman with respect to policies that prohibit the officers' alleged wrongful conduct (i.e., seizing persons with excessive force and without probable cause, or depriving a person of property without due process of law).

Defendant City contends that because Kincaid stated that she knows of no policy of the City of Edwardsville relating to repossession, nor does she know if the City has been involved in any prior repossessions, her policy claims must fail.  Defendant also argues that the City was not deliberately indifferent in either failing to enact certain policies or in failing to train its officers.

Defendant presents evidence that the City was called to repossessions twice in a thirty month period of time before this incident.  In the first incident, the repossessor had left the scene

by the time police arrived, and in the second incident, the repossessor left the scene upon arrival of the police officers.  No alleged constitutional violations occurred when the police officers from the City participated in these two repossessions.  Defendant asserts that since neither the officer defendants nor the City have been previously charged with any constitutional violations arising out of the response to a repossession related call, there is no recurring situation or pattern of alleged constitutional violations under which the city could have been deliberately indifferent in failing to train its officers.  The Court notes Chief Bedell's statement that a response to a repossession could have been logged into the department's database as something other than repossession.

Plaintiffs argue that the City lacked the appropriate policies, procedure and regulations, as well as, failed to train its police officers with respect to the Illinois repossession law and appropriate conduct while defusing a civil disagreement.  Chief Bedell, during his deposition, stated that the City's officers get updates through a regional training program, go through a training academy which includes training on how to handle civil cases, and participate in job training where they work closely with another officer.  Each officer is also required to participate in annual training.  Plaintiffs make general statements that vehicular repossessions take place frequently and the potential for disputes, and that the City failed to have any policies in place. Plaintiffs cite one instance where the City has been accused of making an unlawful arrest and false imprisonment, but the City won on statute of limitation grounds.

Plaintiffs maintain that "the risk of civil rights violations by officers in repossession cases, civil disputes, and unlawful arrest scenarios is such that the need for training is so obvious as to equate constructive notice."  Plaintiffs further contend that by receiving faxes of

10

repossession orders, the City has a duty to know when judicial process is required before assisting in dispossessing citizens of their property.

Plaintiff argues that whether the City knew or was deliberately indifferent to the need for training with respect to Illinois repossession law, or even the handling of civil disputes, is an issue of material fact that cannot be determined prior to trial. Plaintiffs maintain that they cannot properly determine the extent of the City's deliberate indifference without some requested documents, including additional City records. Plaintiffs cannot, however, create a genuine issue of material fact as to whether the City knew or was deliberately indifferent to the need for training or different training in Illinois repossession law or the handling of civil disputes, at this late stage of the case. Plaintiffs had the ability to seek enforcement by the Court of their discovery requests, but did not file a motion to compel or for other relief. The plaintiffs have failed to present evidence of a genuine issue of material fact, and without more, Chief Bedell's statement alone does not create a question of fact as to the City's policy or failure to train as to repossession. It is not enough to hint at some possible documents that might create this issue of material fact and the fact that repossessions may have been otherwise logged in does not create a policy or practice that amounts to a Constitutional deprivation.

By presenting only two instances of repossessions and one incident of unlawful arrests, none of which resulted in a constitutional deprivation, plaintiffs have failed to raised a genuine issue of material fact as to whether there was a policy or custom of unlawful arrests or for officers to intervene or engage in repossession actions. Plaintiffs have presented no evidence, and so have not raised an issue of material fact that the need for more or different training was so obvious and the inadequacy in training so likely to result in a violation of constitutional rights

11

that the City was deliberately indifferent.  Plaintiffs have presented no evidence that a repeated pattern of constitutional violations makes the need for further training plainly obvious to the City.  The Court **FINDS**, therefore, the plaintiffs have not raised an issue of material fact as to the liability of the City based upon a failure to train its officers.

### 2.  42 U.S.C. § 1983 Claims based on Officers' Conduct

A municipality is amenable to suit under § 1983, but not on the basis of *respondeat superior.  Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690 (1978).  Therefore, a municipality cannot be held liable solely because it employed a constitutional wrongdoer; a municipal policy must be the source of the constitutional violation for liability to attach.  *See Id.* at 694.

In order to sue a police officer in his official capacity or to sue the city for the officer's actions, the plaintiffs must prove (1) that the officer used excessive force in violation of the plaintiff's Constitutional rights and (2) that a city policy or custom caused the defendant's unconstitutional behavior.  *Smith v. City of Joliet*, 965 F.2d 235, 237 (7th Cir. 1992).  In *Monell*, 436 U.S. at 691, the Supreme Court held that respondeat superior may not serve as the basis for imposing § 1983 liability.  A municipality can only be found liable when policies are a moving force behind the violation.  *Id.*   According to the Seventh Circuit, "[g]overnmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy."  *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).  In order to survive summary judgment on a § 1983 official-capacity claim, the plaintiff must present evidence demonstrating the existence of an official custom or policy and that the custom or policy was the cause or moving force of the alleged constitutional violation.

12

*Id.*

The Court determined *infra* that Plaintiffs have not presented evidence to raise a genuine issue of material fact as to whether there was a policy or practice of unlawful arrests or for officers to intervene or engage in repossession actions.  Thus, even if the officers' official capacity acts were found to be unconstitutional, plaintiffs' cannot meet the second part of the test: plaintiffs have not presented evidence that an official policy or custom was the driving force behind the violations.

The Court **FINDS**, therefore, the plaintiffs have not established liability of the City based upon the failure to train its officers or based upon the officers' actions, and **GRANTS** summary judgment in favor of the defendant City of Edwardsville on Counts I and II.

## II.  42 U.S.C. § 1983 Claims against the Officers in Their Individual Capacities and Qualified Immunity

Even if the individual defendants were not otherwise entitled to summary judgment, the Court **FINDS** that they would be entitled to qualified immunity on any individual liability claims brought pursuant to 42 U.S.C. § 1983.  The Court must use a two-step analysis to determine whether an officer is entitled to qualified immunity: (1) whether the alleged conduct sets out a constitutional violation; and (2) whether the constitutional standards were clearly established at the time of the violation.  *Young v. Murphy*, 90 F.3d 1225, 1234 (7th Cir. 1996)(citations omitted).

### A.  Unlawful Seizure of Person

The Officers assert that they are entitled to qualified immunity because they had probable cause to arrest plaintiffs. *Murphy*, 90 F.3d 1225, 1234 (7th Cir. 1996)(citations omitted).

The doctrine of qualified immunity shields from liability public officials who perform discretionary duties . . . and it thus protects police officers "who act in ways they reasonably believe to be lawful." The defense provides "ample room for mistaken judgments" and protects all but the "plainly incompetent [or] those who knowingly violate the law." Qualified immunity protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual.

*Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010) (internal citations

omitted). Qualified immunity in the context of probable cause is summarized as follows:

Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an "additional layer of protection against civil liability" if a reviewing court finds that they did not have probable cause. In an unlawful arrest case in which the defendants raise qualified immunity as a defense, this court will "determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." If the officers can establish that they had "arguable probable cause" to arrest the plaintiff, then the officers are entitled to qualified immunity, even if a court later determines that they did not actually have probable cause. Accordingly, we will affirm the district court's grant of summary judgment if we find that "a reasonable police officer in the same circumstances and with the same knowledge ... as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.

*Id.* (internal citations omitted).

Counts III, IV, and V of plaintiffs' complaint state that Gallion, Murray, and Jones

(respectively), acting under color of law, violated Kincaid's rights under the Fourth and

Fourteenth Amendments. More specifically, plaintiffs claim that the Officers' restraint of

Kincaid in handcuffs constituted an unlawful seizure of Kincaid's person with excessive force,

and the restraint and removal of Kincaid's vehicle constituted an unlawful seizure of Kincaid's

property. Plaintiffs allege Kincaid violated no laws in the presence of police officers and no

probable cause existed to support the notion that Kincaid committed any crime. Count VI, VII,

14

and VIII of plaintiffs' complaint state that Gallion, Murray, and Jones, (respectively), violated Johnson's rights under the Fourth and Fourteenth Amendments by restraining her in handcuffs, constituting a seizure of her person.

Gallion stated that when he attempted to speak with Kincaid, he witnessed a pile of burnt rubber behind one of her tires, and was told by the other officers that she had tried to drive her vehicle toward the apartment building and away from the tow truck.  Murray stated that the car did not look stable.  Based upon these facts, the Court **FINDS** that these Officers could have reasonably believed[3] that Kincaid engaged in reckless conduct[4], obstruction[5], endangering a minor[6], and disorderly conduct[7] and this reasonable belief gave them probable cause to arrest

_____

[3]Pursuant to 725 ILCS 5/107-2©, a peace officer may arrest a person when "he has reasonable grounds to believe that the person is committing or has committed an offense."

[4]Under 720 ILCS 5/12-f(a) of the Illinois Criminal Code, "[a] person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he or she performs recklessly the acts that cause the harm or endanger safety, whether they otherwise are lawful or unlawful."
Furthermore, under 720 ILCS 5/4-6 of the Illinois Criminal Code, recklessness is defined as follows:
> A person is reckless or acts recklessly when that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense, and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.  An act performed recklessly is performed wantonly, within the meaning of a statute using the term "wantonly", unless the statute clearly requires another meaning.

[5]Under 720 ILCS 5/31-1 of the Illinois Criminal Code, resisting or obstructing a peace officer consists of the following: "a person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, . . . of any authorized acts within his official capacity commits a Class A misdemeanor."
"Resist" or "Obstruct" implies some physical act or exertion, not mere argument with a policeman, but "some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest."  *People v. Raby*, 240 N.E.2d 595, 599 (Ill. 1968).

[6]Under 720 ILCS 5/12-21.6 of the Illinois Criminal Code, the offense of Endangering the life or health of a child consists of:
> It is unlawful for any person to willfully cause or permit the life or health of a child under the age

plaintiffs.

Regarding Johnson, Gallion specifically ordered her not to re-enter her mother's vehicle. Johnson disregarded this order and proceeded toward the car, following her mother's instructions instead. Failure to obey an officer's lawful order and physically entering the vehicle that she was ordered not to enter obstructs an officer from performing his duties, in violation of Illinois Criminal Code 720 ILCS 5/31-1. Therefore, the Court **FINDS** that probable cause existed to arrest Johnson for disobeying the order of a police officer, and Johnson's arrest was not a constitutional violation.

An officer, in these circumstances, reasonably had probable cause to arrest both plaintiffs, and the Court, therefore, **FINDS** that Gallion and Murray had probable cause to arrest Kincaid, and her arrest did not amount to a constitutional violation. Because the officers had probable cause to arrest both plaintiffs, no constitutional violations occurred pursuant to their arrests, and the officers are entitled to qualified immunity on the unlawful arrest claims.

### 2. Unlawful Seizure of Property Without Due Process of Law

In light of the Court's finding that the arrests were lawful, and carried out with probable cause, the Court has foreclosed the argument that the officers' actions were for the purpose of carrying out a repossession or assisting in a repossession.[8] The facts of this case support the

---

of 18 to be endangered or to willfully cause or permit a child to be placed in circumstances that endanger the child's life or health, except that it is not unlawful for a person to relinquish a child in accordance with the Abandoned Newborn Infant Protection Act.

[7]Under 720 ILCS 5/26-1 of the Illinois Criminal Code, a person can commit Disorderly Conduct in a number of ways, but the relevant section for the present case is when a person knowingly "[d]oes any act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."

[8]Under 810 ILCS 5/9-609 of the Illinois Uniform Commercial Code, a secured party may take possession of collateral after default "pursuant to judicial process" or "without judicial process, if it

Court's finding.  The parties do not dispute the fact that even though plaintiffs were arrested, they were not charged.  The plaintiffs were not detained so that the vehicle could be towed away.  In fact, the tow truck driver was arrested, and his boss had to come retrieve Kincaid's vehicle.

At the time the vehicle was taken, Kincaid was not detained in a police car, was not hand-cuffed, had been released from arrest without charge, and did not confront the tow truck driver's boss when he arrived to drive the tow truck away with Kincaid's vehicle attached. Kincaid admits that her brother told her to give up the vehicle, the officers did not tell her she must give up her vehicle or face another arrest, yet she still stated that she did not think she had the choice of keeping her vehicle.  Even assuming Kincaid did not think she had a choice, and that the tow truck driver would not have driven away with Kincaid in the vehicle, the officers actions were based upon probable cause and not for the purpose of aiding in the repossession. The officers came upon a scene where the two parties were in dispute, and the officers acted simply to keep the peace.  The tow truck driver did not speed off with the vehicle while Kincaid was under arrest.  At the time the tow truck actually left with the vehicle, two of the three officers were gone and Kincaid was no longer protesting.  An arrest that occurred to keep the peace should not be manipulated to bring about liability for civil rights and state tort violations. The officers were called to the scene and responded reasonably.  The fact that the vehicle was eventually repossessed, whether lawfully or not, does not amount to an unlawful seizure by the officers.

Furthermore, even if the Court were to determine the officers unconstitutionally seized Kincaid's property without due process of law, there is no issue of material fact as to the second

_____

proceeds without a breach of the peace."

17

required element, that is, that constitutional standards regarding unlawful seizure of property were established at the time of the violation.

In *Meyers v. Redwood City*, 400 F.3d 765, 774 (9th Cir. 2005), a Ninth Circuit case in which the facts were very similar, the court found that even if officers crossed a line established by the law, taking them from merely peace-keepers to participating in the repossession, "the officers are surely entitled to qualified immunity because they could not have known that they were violating the Plaintiffs' 'clearly established' constitutional rights." (*Citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court notes that even if the officers had a copy of the relevant caselaw:

> in their back pockets, the officers could not have determined at what point in the middle of this messy repossession they deprived Meyers of her property without due process of law. Meyers may have every right to be unhappy with the situation, but the officers cannot be faulted for attempting to settle this late-night confrontation peacefully. In these circumstances, it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Meyers*, 400 F.3d at 774 (internal citations and quotations omitted).

Under the same reasoning, this Court **FINDS** that the officers could not have known that their conduct was unlawful in the situation they confronted. Accordingly, the Court **FINDS** that the officers are entitled to qualified immunity on the unlawful seizure of property claims.

## III. State Law Tort Claims

It is well established in the Seventh Circuit that "in a § 1983 case with pendent state claims that '[i]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *Simkunas v. Tardi*, 720 F.Supp. 687, 699 (N.D.Ill., 1989) (citing *Bieneman v. City of Chicago*, 864 F.2d 463, 470 (7th Cir. 1988), *quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Hughes v.*

18

*Meyer*, 880 F.2d 967, 972 (7th Cir. 1989).

Accordingly, the Court **DISMISSES** the plaintiffs' pendent state claims against each defendant, namely: Battery (Counts IX, X, XI, XII, XIII, and XIV), False Imprisonment (Counts XV, XVI, XVII, XVIII, and XIV), and Trespass to Chattels (Counts XXI, XXII, XXIII, and XXIV), for lacking "'any independent basis for federal jurisdiction.'" *Simkunas*, 720 F.Supp. at 699, *citing Hughes v. Meyer*, 880 F.2d at 972.

<u>**CONCLUSION**</u>

The Court, therefore, **GRANTS** defendants' motion for summary judgment (Doc. 43) as follows:

The Court **GRANTS** the motion for summary judgment and judgment is entered in **FAVOR** of defendant the City of Edwardsville and **AGAINST** plaintiff Angelique Kincaid on Count I and in **FAVOR** of defendant City of Edwardsville and **AGAINST** plaintiff  Spanniesha Johnson on Count II.

The Court **GRANTS** the motion for summary judgment and judgment is entered in **FAVOR** of defendant Timothy Gallion in his official capacity and **AGAINST** plaintiff Angelique Kincaid on Count III, and in **FAVOR** of defendant Timothy Gallion in his official capacity and **AGAINST** plaintiff Spanniesha Johnson on Count VI.

 The Court **GRANTS** the motion for summary judgment and judgment is entered in **FAVOR** of defendant James Murray in his official capacity and **AGAINST** plaintiff Angelique Kincaid on Count IV, and in **FAVOR** of defendant James Murray in his official capacity and **AGAINST** plaintiff Spanniesha Johnson on Count VII.

The Court **GRANTS** the motion for summary judgment and judgment is entered in

**FAVOR** of defendant Barry Jones (incorrectly named as "Eric Jones") in his official capacity and **AGAINST** plaintiff Angelique Kincaid on Count V, and in **FAVOR** of defendant Barry Jones (incorrectly named as "Eric Jones") in his official capacity and **AGAINST** plaintiff Spanniesha Johnson on Count VIII.

The Court **GRANTS** summary judgment based on qualified immunity in **FAVOR** of defendant Timothy Gallion in his individual capacity and **AGAINST** plaintiff Angelique Kincaid on Count III, and in **FAVOR** of defendant Timothy Gallion in his individual capacity and **AGAINST** plaintiff Spanniesha Johnson on Count VI.

The Court **GRANTS** the motion for summary judgment based on qualified immunity and judgment is entered in **FAVOR** of defendant James Murray in his individual capacity and **AGAINST** plaintiff Angelique Kincaid on Count IV, and in **FAVOR** of defendant James Murray in his individual capacity and **AGAINST** plaintiff Spanniesha Johnson on Count VII.

The Court **GRANTS** the motion for summary judgment based on qualified immunity and judgment is entered in **FAVOR** of defendant Barry Jones (incorrectly named as "Eric Jones") in his individual capacity and **AGAINST** plaintiff Angelique Kincaid on Count V, and in **FAVOR** of defendant Barry Jones (incorrectly named as "Eric Jones") in his individual capacity and **AGAINST** plaintiff Spanniesha Johnson on Count VIII.

The Court sua sponte **DISMISSES without prejudice**, for want of jurisdiction, the pendant state law claims for Battery brought by plaintiff Angelique Kincaid in Counts IX, X, XI, and by plaintiff Spanniesha Johnson in Counts XII, XIII, and XIV; for False Imprisonment by plaintiff Angelique Kincaid in Counts XV, XVI, XVII and by plaintiff Spanniesha Johnson in Counts  XVIII, XIX, and XX; and for Trespass to Chattels by plaintiff Angelique Kincaid in

Counts XXI, XXII, XXIII, and XXIV.

Plaintiffs' motion for summary judgment ( Doc. 51) is, accordingly, **DENIED**.

Plaintiff's motion to strike (Doc. 55) is **DENIED** as moot.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.  Each party to bear its own costs.


**IT IS SO ORDERED.**

**DATE: October 4, 2010**

                                    **/s/  WILLIAM D. STIEHL**
                                         **DISTRICT JUDGE**